IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.: 16-cv-02797-LTB

HECTOR L. GARCIA, JR.,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

---

ORDER

---

        Plaintiff Hector Garcia Jr. appeals the final decision of the Acting Commissioner of Social Security ("SSA") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. I have considered the parties' briefs (ECF Nos. 17, 19–20) and the administrative record (ECF No. 14) ("AR"). Oral argument would not materially assist me in determining this appeal.

        Mr. Garcia argues the administrative law judge (ALJ) erred when he concluded Mr. Garcia did not meet the requirements of listing 1.04A (disorders of the spine). He also argues the ALJ erred in evaluating Mr. Garcia's residual functional capacity (RFC) by improperly analyzing the opinion of a treating phsycian and improperly weighing Mr. Garcia's obesity and his subjective reports of pain. I agree that the ALJ erred when he determined Mr. Garcia did not meet the requirements of listing 1.04A and in evaluating Mr. Garcia's RFC. Accordingly, I

**REVERSE** SSA's decision and **REMAND** for proceedings consistent with this opinion.

## I. Background

### A. Procedural History

Mr. Garcia filed his application for disability insurance benefits and supplemental social security income with SSA in October 2013, alleging disability beginning April 2, 2013. AR 130–38. After SSA initially denied his claim, AR 70, Mr. Garcia requested a hearing, AR 90. The hearing took place on July 8, 2015, before an ALJ. AR 28–58. On August 24, 2015, the ALJ denied Mr. Garcia's claim, concluding he was not disabled within the meaning of the Social Security Act. AR 7–23. Mr. Garcia asked SSA's Appeals Council to review the ALJ's decision. AR 6. On October 21, 2016, the Appeals Council denied review, AR 1–5, making the ALJ's decision the final decision of SSA, *see Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On November 17, 2016, Mr. Garcia timely filed this appeal. (ECF No. 1.) I have jurisdiction pursuant to 42 U.S.C. § 405(g).

### B. Facts

Mr. Garcia is a 53 year–old man who most recently worked as a taxi driver and dispatcher. He also has worked as a truck driver and a director for an adult baseball association headquartered in Denver, Colorado.

On April 3, 2013, Mr. Garcia was hit head–on by a drunk driver while he was driving his taxi. AR 258, 338. The airbags deployed, and immediately after the accident, Mr. Garcia complained of neck, back, and abdominal pain. *Id.* At the

emergency room, x–rays and an ultrasound did not show any acute abnormality, and Mr. Garcia was discharged. AR 259–69.

A few days later, Mr. Garcia went to see Dr. Annu Ramaswamy about a worker's compensation claim because he was experiencing head, back, neck, and right leg pain, as well as some dizziness. AR 338. Mr. Garcia's neck and back were tender on palpitation, and a straight–leg test (a test used to detect whether a patient with low back pain has an underlying herniated disk) was positive on the right leg. AR 340. Dr. Ramaswamy also noted that Mr. Garcia had spasms in his lumbar spine. *Id.* An MRI of his back showed "[s]evere foraminal stenosis on the right L5 [lumber vertebrae 5]–S1 [sacral vertebrae 1]" level and "a focal compressive deformity of the exiting right L5 nerve root." AR 349. It also showed "early facet arthritis and shallow minor disc bulge at L4–5." *Id.* In early May and April 2013, Mr. Garcia's straight–leg tests continued to be positive on the right side. AR 328 (positive on May 9, 2013), 334 (positive on April 15, 2013).

Mr. Garcia then saw a specialist, Dr. Michael Rauzzino, at the Front Range Spine and Neurosurgery center. Dr. Rauzzino found decreased strength in Mr. Garcia's right leg and significant muscle tenderness in his lumbar spine, but a straight-leg test was negative on the right. AR 345. Dr. Rauzzino recommended conservative treatment, including physical therapy, anti–inflammatory medications, and epidural steroid injections, "to try and get him some relief." AR 345–46. He told Mr. Garcia to follow up with him after the epidural injections. AR 346.

3

Mr. Garcia started conservative treatment soon afterward. In addition to physical therapy, medication, and steroid injections, Mr. Garcia was treated with radiofrequency ablation (a minimally invasive procedure designed to decrease pain signals from a nerve). AR 298. Mr. Garcia reported some pain relief from the treatments, *e.g.*, AR 317, even though the relief was sometimes temporary, *e.g.*, AR 310. During this period, Dr. Ramaswamy consistently noted spasms and tenderness in Mr. Garcia's lumbar spine. *E.g.*, AR 283, 288, 318, 323, 328, 334. He also observed that Mr. Garcia walked with antalgic gait (essentially a limp). AR 282, 288, 294, 318, 322, 327, 333. Results of the straight–leg test on the right side were largely negative while Mr. Garcia was periodically receiving the steroid injections and other treatments and for a few months afterward. AR 323 (negative on May 24, 2013), 318 (negative on June 17, 2013); 311 (negative on July 22, 2013), 306 (negative on August 5, 2013), 300 (negative on September 5, 2013), 283 (negative on November 4, 2013), 279 (positive on December 2, 2013), AR 273 (negative on December 17, 2013), 294 (negative on September 26, 2013); 358 (negative on January 2, 2014).

Mr. Garcia followed up with Dr. Rauzzino in October 2013. Mr. Garcia said his leg pain had decreased since he started treatment in May 2013, but his back pain remained significant. AR 347. Mr. Garcia reported he was able to function and drive, but he complained about some problems with his neck and upper extremity. *Id.* Because those problems were not part of the worker's compensation claim and Mr. Garcia lacked health insurance, he didn't receive treatment for them.

4

*Id.* Dr. Rauzzino did not think Mr. Garcia was a good candidate for spinal surgery since he had shown some improvement with conservative care. *Id.* Dr. Rauzzino referred Mr. Garcia back to Dr. Ramaswamy for further evaluation. *Id.*

By January 2014, Mr. Garcia had returned to work on modified duty, working four hours a day. AR 460. However, he was struggling to sit and was still experiencing low back pain. AR 461. In early 2014, Mr. Garcia went to a few sessions with a psychologist to work on strategies for coping with pain. AR 466–75.

In April 2014, Dr. Anselmo Mamaril, an agency phsycian, reviewed Mr. Garcia's medical records and evaluated his physical impairments. AR 62–67. He assessed limitations that are broadly consistent with the ability to perform light work. *Id.* He also opined that Mr. Garcia did not meet the requirements of any listing, but he did not elaborate on this conclusion. AR 65.

Dr. Ramaswamy continued to treat Mr. Garcia after Dr. Mamaril's evaluation. Mr. Garcia consistently complained of pain, and Dr. Ramaswamy consistently found muscle weakness and spasms. AR 405, 399–400, 394, 388. Straight–leg tests were consistently positive on the right. AR 405, 399–400, 394, 388. In late 2014 or early 2015, Mr. Garcia stopped working completely. AR 12, 35–38, 153–54. In March 2015, the most recent treatment record from Dr. Ramaswamy in the file, Mr. Garcia's straight–leg test was positive on the right, and he had an antalgic gait. AR 373. He complained of "constant lower back pain along with right extremity weakness and numbness/tingling." AR 372. Dr. Ramaswamy concluded Mr. Garcia's back issues were "stable" at that point. AR 374.

5

In May 2015, Dr. Ramaswamy opined on Mr. Garcia's limitations. He opined he could occasionally lift and carry up to ten pounds, could sit continuously for an hour for up to five hours in an eight–hour work day, and could stand and walk 15–20 minutes continuously for up to three hours in eight–hour work day. AR 492. He explained that Mr. Garcia "needs to alternate standing/walking with sitting as much as possible. AR 493. He also opined that Mr. Garcia could never climb ladders or scaffolds, crouch, kneel, or crawl, but he could occasionally climb stairs. AR 494. Many of these limitations are more restrictive than those endorsed by Dr. Mamaril.

B.     Standard for Reviewing SSA's Decision

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822

F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not reweigh the evidence or substitute my judgment for that of the ALJ. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Mr. Garcia had not engaged in substantial gainful activity from his alleged onset date of April 2, 2013, and met the insured requirements of the Social Security Act through December 31, 2017. AR 12. At step two, the ALJ found Mr. Garcia had two severe impairments: degenerative disc disease and obesity. AR 13. At step three, the ALJ concluded that Mr. Garcia's impairments did not meet or equal any of the "listed impairments" that mandate a conclusive finding of disability under the social security regulations. AR 13–14. At step four, the ALJ found that Mr. Garcia had the following RFC:

> [T]he claimant has the residual functional capacity to perform a light work as defined in 20 CFR 404.1567(b) except that the claimant cannot climb ladders or scaffolds and cannot crouch, crawl, or kneel. He can occasionally stoop and climb stairs and can frequently reach, handle, and finger. In addition, the claimant needs the option of alternating sitting and standing every 30 minutes.

AR 14. The ALJ determined that Mr. Garcia could return to his past relevant work as a program director. AR 18–19. The ALJ accordingly concluded that Mr. Garcia

7

was not disabled under the Social Security Act. AR 19.

## IV. Analysis

### A. Listing 1.04A (Disorders of the Spine)

Mr. Garcia argues the ALJ erred when he determined that Mr. Garcia did not meet the requirements for Listing 1.04A, a listing characterized by a compromised nerve root or spinal cord.

The listings at 20 C.F.R. pt. 404, subpt. P, app. 1 are examples of medical conditions that ordinarily prevent an individual from engaging in any gainful activity. *See* 20 C.F.R. § 404.1525(a) (stating that the listings "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience"). Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. § 1.04A. Listing 1.04A provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equine) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

*Id.*

"To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that

8

support each of the various requisite criteria for the impairment." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant has the burden to present evidence establishing his impairments meet or equal listed impairments. *Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

The ALJ concluded that Mr. Garcia did not meet Listing 1.04A because "there does not appear to be any atrophy (although there is documentation of motor loss)." AR 13 (citing AR 22, 28). The ALJ also concluded he did not meet the Listing's requirements because even though some of the straight–leg tests were positive, others were negative. *Id.*

Mr. Garcia challenges the AL's first reason—that the medical records do not reflect atrophy—as inconsistent with requirements of the listing. Listing 1.04A requires "motor loss," which can be evidenced by "atrophy with associated muscle weakness" *or* "muscle weakness." 20 C.F.R. pt. 404, subpt. P, app. 1. § 1.04A (Listing 1.04A). As the ALJ recognized, "there is documentation of motor loss" in the record. AR 13. Yet contrary to the plain language of the listing, the ALJ required the motor loss to be evidenced by atrophy. *See id.* Because there was evidence of motor loss through muscle weakness (*e.g.*, AR 341, 334, 345, 388, 481), the ALJ should not have also required evidence of atrophy. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

Mr. Garcia challenges the ALJ's second reason—that some of the straight–leg

9

tests were positive—because the positive tests largely occurred during the short period of time while he was receiving spinal steroid injections and other treatments and before he exacerbated his injury when he tried to return to work. The listing introduction acknowledges that abnormal findings, such as positive straight–leg tests, "may be intermittent," and therefore "their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Pt. 404, subpt. P, app. 1, part A, § 1.00(D). The record in this case shows that aside from a few months in 2013 while he was receiving treatment, most of Mr. Garcia's straight–leg tests were positive on the right, including all the most recent ones. *See, e.g.*, AR 405 (positive on September 2, 2014), 399–400 (positive on September 30, 2014), 394 (positive on November 4, 2014), 388 (positive on December 2, 2014), 372–74 (positive on March 4, 2015). However, the ALJ provided no reason for rejecting all of these positive tests in favor of the negative ones. *See Olechna v. Astrue*, No. 08-CV-398, 2010 WL 786256, at *5 (N.D.N.Y. Mar. 3, 2010) (reversing where the ALJ provided "no rationale for rejecting the majority of positive [straight–leg test] results in favor of the . . . negative result"). By summarily rejecting the numerous positive tests, the ALJ erred.

The Commissioner's brief largely glosses over both of these mistakes, and instead offers two alterative bases for affirmance: Mr. Garcia's part–time work history, which the Commissioner suggests demonstrates his impairment is not so severe that it precludes any gainful activity, and the opinion of a state agency physician, who reviewed Mr. Garcia's file and opined (without explanation) that he

10

did not meet any listing. These reasons were never contemplated by the ALJ and are not appropriate grounds for affirming his decision. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (reversing and remanding where lower court improperly "supply[ed] possible reasons for giving less weight to or rejecting the treating physician's opinion"; holding the "ALJ's decision should have been evaluated based solely on the reasons stated in the decision"); *Russ v. Colvin*, 67 F. Supp. 3d 1274, 1279 (D. Colo. 2014) ("[T]he Commissioner's attempts, post hoc, to fill in the blanks on the ALJ's behalf are improper . . . ."). And even if I considered them, I would reject them on their merits.

First, the Commissioner's argument regarding the impact of Mr. Garcia's part–time work history is based on a misreading of the relevant law. Citing the Supreme Court's decision in *Sullivan v. Zebley*, the Commissioner argues that Mr. Garcia cannot meet the requirements of any listing because he performed some part–time work during the disability period. In *Zebley*, the Supreme Court invalidated the Commissioner's regulations for determining whether a child is disabled. Under the then-existing regulations, a child could only be disabled if she met the requirements for a listing and could not qualify for benefits based on RFC. 493 U.S. at 535–39. The Court reasoned that the listings generally define impairments that preclude "*any* gainful activity," not just "substantial gainful activity," as required in the statute. *Id.* at 532 (emphasis in original). The listings are therefore essentially a shortcut to finding disability because they are *more* severe than the statutory standard. *See id.*

11

Based on the Supreme Court's explanation in *Zelby* that the listings generally preclude *any* gainful activity, the Commissioner argues that because Mr. Garcia worked part–time for part of the disability, he cannot meet the listing. This reasoning is backward; it would negate the conclusive presumptions set forth in the listings. As the Supreme Court said in *Zelby*, "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532. Therefore, "if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id.* Mr. Garcia's part–time work history is relevant to whether he meets the listing only to the extent it bears on whether he is "actually working." *See id.*; *Davidson v. Sec'y of Health & Human Servs.*, 912 F.2d 1246, 1252 (10th Cir. 1990) ("[T]he function of the listings is to establish a description of impairments so severe as to constitute an automatic conclusive presumption of disability.").

Second, the fact that an agency physician opined that Mr. Garcia did not meet Listing 1.04A cannot save the ALJ's decision because, as I describe below, the ALJ improperly discounted the opinion of Mr. Garcia's treating physician, Dr. Ramaswamy, which imposed more restrictive limitations than the agency physician's. *Cf. Maron v. Berryhill*, No. 16-CV-02943-MEH, 2017 WL 2333102, at *7 (D. Colo. May 30, 2017) (rejecting argument that ALJ's failure to analyze whether claimant met a listing was harmless where ALJ also erred in assessing

12

claimant's RFC).

Thus, neither the ALJ's stated reasons nor those supplied by the Commissioner are valid reasons for concluding that Mr. Garcia does not meet the requirements of Listing 1.04A. Remand is necessary for the ALJ to reassess this issue.

**B.     RFC**

Mr. Garcia also argues the ALJ erred in assessing his RFC because he improperly weighed the opinion of a treating physician, Dr. Ramaswamy, and failed to adequately account for his pain and his obesity.

RFC represents "the most [the claimant] can still do despite [his] limitations," 20 C.F.R. § 404.1545(a)(1), and must include "all of [the claimant's] medically determinable impairments," *id.* § 404.1545(a)(2). An RFC determination is an administrative assessment based on all the evidence of how the claimant's impairments and related symptoms affect his or her ability to perform work-related activities. *Young v. Barnhart*, 146 Fed. App'x 952, 955 (10th Cir. 2005) (unpublished). The final responsibility for determining the claimant's RFC rests with the Commissioner and is based upon all the evidence in the record. *Id.; see also* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) (indicating that the RFC assessment by the ALJ must include a discussion of why reported symptom–related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence).

1. **Dr. Ramaswamy's Opinion**

Dr. Ramaswamy gave multiple opinions over the course of several years, including many that imposed only temporary restrictions. I limit my analysis here to the ALJ's rejection of Dr. Ramaswamy's 2015 opinion.

The amount of deference due to an opinion about a claimant's impairments varies depending on its source. An ALJ should "[g]enerally . . . give more weight to opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). In deciding how much weight to give a treating source opinion, an ALJ must complete a two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An ALJ must first determine whether the opinion qualifies for "controlling weight." *Id.* An opinion from a treating source is entitled to controlling weight if it is both "well–supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. *Id.*; Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996). Even if not entitled to controlling weight, a treating source's opinion "may still be entitled to deference." *Id.* The amount of deference due depends on weighing several factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c). "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted). An ALJ may dismiss or discount an opinion from a treating source only if he provides "specific, legitimate reasons" for the rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted).

In May 2015, Dr. Ramaswamy opined that Mr. Garcia could occasionally lift and carry up to ten pounds, could sit continuously for an hour at a time for up to five hours in an eight–hour work day, and could stand and walk continuously 15–20 minutes at a time for up to three hours in eight–hour work day. AR 492. He explained that Mr. Garcia "needs to alternate standing/walking with sitting as much as possible." AR 493. He also opined that Mr. Garcia could never climb ladders or scaffolds, crouch, kneel, or crawl, but could occasionally climb stairs. AR 494.

The ALJ largely rejected Dr. Ramaswamy's opinion, largely with a non–specific platitude. Without citing any evidence in the record, the ALJ concluded Dr. Ramaswamy's opinion was "inconsistent with his examination notes, each other, and the record as a whole." AR 17. These boilerplate phrases, unconnected to any evidence in the record, fall short of the "specific, legitimate reasons" required to reject treating physician's opinion. *See Chapo*, 682 F.3d at 1291; *see also Russ,* 67 F. Supp. 3d at 1279 ("The court is neither inclined nor,

indeed, authorized, to search through the administrative record in an attempt to pinpoint evidence that might support the ALJ's findings . . .").

While the ALJ did provide two specific reasons for rejecting Dr. Ramaswamy's opinion, neither are legitimate. First, the ALJ speculated about the basis of Dr. Ramaswamy's opinion, observing that his opinions "appear to be based on the claimant's subjective allegations rather than the objective evidence." AR 17. An ALJ may not reject a treating physician's opinions based on speculation. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." (emphasis and quotation omitted)). But even if Dr. Ramaswamy had based his opinion on Mr. Garcia's subjective complaints, that would not be a valid reason for rejecting it:

> [A] medical finding of disability is not based solely on objective test results. It includes an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain. A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the objective test results, taken alone, do not fully substantiate the claim.

*Nieto v. Heckler*, 750 F.2d 59, 60–61 (10th Cir. 1984); *see also Russ*, 67 F. Supp. at 1278–79 ("The ALJ's own obvious disbelief of plaintiff's reports regarding her own limitations provides no basis for rejecting an otherwise properly substantiated medical source opinion.").

16

Second, the ALJ discounted Dr. Ramaswamy's 2015 opinion because it was inconsistent with his opinion from a year earlier. Given that Dr. Ramaswamy treated and evaluated Mr. Garcia multiple times between the two opinions, it was inappropriate for the ALJ to summarily reject his opinion simply because it differed from an opinion from a year earlier. *See Chapo*, 682 F.3d at 1291.

The Commissioner argues that even if the ALJ *said* he gave "little weight" to Dr. Ramaswamy's opinion, he actually adopted many of the limitations Dr. Ramaswamy imposed, making any weighing error inconsequential. While the ALJ did adopt the postural limitations endorsed Dr. Ramaswamy despite indicating he gave the opinion "little weight," he rejected other limitations. For instance, the ALJ concluded that Mr. Garcia could perform light work, which involves lifting up to 20 pounds and frequently lifting up to 10 pounds. AR 14; 20 C.F.R. § 404.1567(b) (defining light work). Dr. Ramaswamy opined that Mr. Garcia could never lift 20 pounds and could only occasionally lift up to 10 pounds. AR 492. Thus, the ALJ plainly rejected some of the limitations Dr. Ramaswamy imposed.

Because the ALJ failed to provide specific, legitimate reasons for discounting Dr. Ramaswamy's opinion, remand is warranted. If the ALJ again rejects Dr. Ramaswamy's opinion, he should provide specific and legitimate reasons, with citations to the record, to support his decision.

### 2. Pain and Obesity

Mr. Garcia argues the ALJ's RFC determination fails to adequately account for all his impairments. First, he argues that the ALJ conflated Mr. Garcia's

17

depression diagnosis with his pain disorder diagnosis and therefore failed to adequately consider his persistent complaints of pain. Second, Mr. Garcia argues that the ALJ's RFC analysis failed to adequately address Mr. Garcia's obesity, despite recognizing it was a severe impairment.

Because I already determined that the ALJ erred in his RFC analysis, I do not reach this argument. However, I note that on remand, the ALJ will need to reassess Mr. Garcia's RFC, and his conclusions with respect to Mr. Garcia's pain and obesity may change.

### V. Conclusion

For the above reasons, the SSA's decision is **REVERSED**, and this case is **REMANDED** for proceedings consistent with this opinion.


Dated: November  7 , 2017 in Denver, Colorado.


BY THE COURT:


  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE